

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FTB:EWS     *271 Cadman Plaza East*
F. # 2022R00576     *Brooklyn, New York 11201*

December 8, 2023

By ECF & E-Mail

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:     United States v. Joseph Elias
                   Criminal Docket No. 22-317 (LDH)

Dear Judge DeArcy Hall:

       The government respectfully submits this sentencing memorandum in advance of defendant Joseph Elias's sentencing hearing, which is scheduled for January 19, 2024 at 11:00 a.m. Earlier this year, the defendant pleaded guilty to conspiracy to use fire to commit a felony, in violation of Title 18, United States Code, Section 844(m). For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("Guidelines") range of 77 to 96 months' imprisonment.

I.     Factual Background and Prior Proceedings[1]

       On March 22, 2022 at approximately 5:30 a.m., Joseph Elias hurled four Molotov cocktails that set fire to the Magnum Automotive Body Shop ("Magnum"), located in Brooklyn, New York. (See PSR ¶¶ 4–6.) When the fire ignited, workers were operating a rebar business next door, with trucks moving in and out of the area. (PSR ¶ 4.) The fire spread across Magnum's lot where its inventory of vehicles was located and reached very high temperatures, causing the destruction of several luxury vehicles. (Id.)

       Two eyewitnesses called 911 to report the fire. One witness told emergency personnel during the 911 call that he saw a person throw a lit object over Magnum's fence. The second witness corroborated the account of how the fire started and described the perpetrator as wearing blue jeans, a dark colored sweatshirt, and green goggles, and was carrying an orange object near his face. (Id. ¶ 5.) Law enforcement subsequently collected surveillance footage

---

[1]     Unless otherwise noted, the facts recited below are derived from the Presentence Investigation Report ("PSR").

from the surrounding area, which captured the defendant dressed in the clothing described by the witnesses walking from his apartment to Magnum and back,[2] while carrying the bag he used to hide the Molotov cocktail. (See id. ¶ 6.) They then recovered an object of clothing from the defendant's apartment that he wore when he committed the arson.

The defendant was initially charged by complaint with arson, in violation of 18 U.S.C. §§ 844(a)(1) and 844(i), and arrested in June 2022. After his arrest, the defendant confessed that he set fire to Magnum using Molotov cocktails. (Id. ¶ 9.) He also admitted that in the aftermath of the arson, the defendant contacted the owner of Magnum, offered to divulge who set fire to his business in exchange for money, and lied to the owner when he paid the money—falsely implicating an innocent person. (Id. ¶¶ 8–9.) The investigation revealed that the defendant was recruited by others to commit the crime for the purpose of extorting Magnum's owner. (See id. ¶ 10.) The defendant allowed agents to search his phone and directed them to a video he took from his apartment window immediately after the arson. As embers blazed in the distance and sirens blared in the background of the video, the defendant boasted, "You hear that? . . . That's the sound of a beautiful job well done." (ELIAS000127.)

Following his initial appearance, the defendant was released on a $75,000 bond so that he could attend an in-patient substance abuse treatment program. (Id. ¶ 3.) Less than a week after his admission, the defendant left the program, supposedly to seek treatment from a different facility. (Id.) Despite Pretrial Service's numerous attempts to locate the defendant (including by repeatedly contacting the defendant's mother, his suretor), the defendant did not surface for weeks. Instead, he decided to commit more crimes—namely, two burglaries. (PSR ¶¶ 49–50.[3]) Weeks later, he was arrested by the New York Police Department and detained at Rikers.

On July 13, 2022, the defendant was charged by a grand jury sitting in the Eastern District of New York with arson, arson conspiracy, and possessing and making a destructive device, in violation of 18 U.S.C. § 844(i), 844(n) and 26 U.S.C. § 5861(d). He was transferred via writ into federal custody and ordered detained on August 5, 2022. On May 8, 2023, the defendant pleaded guilty before the Honorable Robert M. Levy, United States Magistrate Judge, to a superseding information charging him with conspiracy to use fire to commit another felony, in violation of 18 U.S.C. § 844(m). The Court accepted the defendant's guilty plea on June 26, 2023.

II.     The Defendant's Criminal History

The defendant's extensive criminal history, as outlined in the PSR and summarized below, reflects that the defendant's entire adult life has been marked by crime. He has been convicted of twelve misdemeanor offenses and four felonies (Id. ¶¶ 26–41), including

---

[2]     Magnum was located less than 0.5 miles from the defendant's apartment building.

[3]     As noted in the PSR, the defendant was not ultimately convicted of these burglaries. (Id.) They instead were consolidated with another pending burglary case, to which the defendant has pleaded guilty and awaits sentencing. (See PSR ¶ 41.)

criminal contempt in the first degree (id. ¶ 31), criminal possession of a controlled substance (id. ¶ 33), criminal sale of a controlled substance (id. ¶ 34), and burglary (id. ¶ 41). (See also id. ¶¶ 46–52 (listing additional arrests).) Some of these crimes involved instrumentalities of violence, property damage, and threats to others. For instance, in 2002, when the defendant committed grand larceny, he followed an individual into his home, forcibly pushed him inside, threatened him with a box cutter and said, "give me you f[*****] wallet." (Id. ¶ 26.) In 2006, the defendant was convicted of resisting arrest after he kicked an officer. (Id. ¶ 29.) A year later, the defendant violated an order of protection put in place for the safety of others by damaging property. (Id. ¶ 31.) And in 2010, he was found in possession of a loaded firearm. (Id. ¶ 33.)

### III. Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

IV.  **The Sentencing Guidelines**

The United States Probation Department ("Probation") has calculated the defendant's Guidelines as follows:

| | |
|---|---:|
| Base Offense Offense Level (U.S.S.G § 2E2.1(a)) | 20 |
| Plus: Use of a Dangerous Weapon (U.S.S.G. § 2E2.1(b)(1)(B) | +4 |
| Less: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | <u>-3</u> |
| Total: | <u>21</u> |

(PSR ¶¶ 15–24.) Because the defendant is in Criminal History Category ("CHC") VI, the advisory Guidelines range is 77 to 96 months' imprisonment. (Id. ¶¶ 43, 90.)

The government agrees with Probation's Guidelines calculation. Moreover, the defendant stipulated to an advisory Guidelines range of 77 to 96 months' imprisonment in his plea agreement.[4]

V.  **A Guidelines Sentence is Appropriate**

The government respectfully submits that a sentence within the applicable Guidelines range of 77-96 months is appropriate under 18 U.S.C. § 3553(a).

To state the obvious, the defendant's conduct was extremely serious. His decision to set fire to a business—an autobody shop no less, which was filled with combustible material—was incredibly dangerous. The choice of weapon presented a particularly severe risk of danger because the defendant could not control who or what would be harmed by the fire set by the four Molotov cocktails he hurled at Magnum. The fire could have easily spread, causing more damage to property and threatening human life, including the workers who were on shift at a neighboring rebar business. That the defendant committed the crime to extort a business owner—in his words, a "beautiful job well done"—independently calls out for punishment. His decision to re-victimize the business owner by promising to tell him who committed the crime, only to then falsely implicate an innocent person, was cruel. And worst of all, the defendant's conduct devastated Magnum. The victim was not able to resume operations, closed down his business of nearly fifteen years, and moved to another country. The "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and the "seriousness of the offense," id. § 3553(a)(2)(A), thus merit a substantial sentence.

A Guidelines sentence is also necessary to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Given the gravity of the offense and the potentially catastrophic damage that might have occurred, this Court should make clear to anyone

---

[4] The provision of the Guidelines set forth in the defendant's plea agreement to calculate his offense level differed from the provision set forth in the PSR, as it did not account for the application of the cross reference under U.S.S.G. § 2K1.3(c)(1)B). The government agrees that the Guidelines calculation set forth in the PSR is correct.

4

contemplating similar actions that such an offense will be punished severely. There is also a strong need for individual deterrence. The defendant's criminal history exhibits repeated encounters with law enforcement, with multiple arrests and convictions to his name. While the government acknowledges that the defendant has struggled with substance abuse, including when he committed the instant offense (see PSR ¶¶ 53, 65, 69–74), those challenges do not excuse the extraordinarily serious conduct for which he has been convicted.

VI.    Restitution

The government respectfully requests that the Court impose restitution for the harm caused by the defendant to the victim.[5]

Under the Mandatory Victim Restitution Act (the "MVRA"), defendants convicted of certain offenses must make restitution to the victims of their criminal behavior if they were convicted of "an offense against property under [Title 18][.]" 18 U.S.C. § 3663A(c)(1)(A)(ii). "Victim," as relevant here, is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663A(a)(2). Various courts have indicated that the crime for which the defendant stands convicted qualifies as an MRA-eligible offense. See, e.g., United States v. Vrancea, 136 F. Supp. 3d 378, 400–01 (E.D.N.Y. 2015), aff'd, 688 F. App'x 94 (2d Cir. 2017) (arson under 18 U.S.C. § 844(i) qualifies as offense against property under the MVRA); United States v. Schlifstein, No. 18-CR-217 (KMW), 2020 WL 2539123, at *2 (S.D.N.Y. May 19, 2020) (characterizing "arson" as a "typical offense against property" for purposes of the MVRA); United States v. Simmonds, 235 F.3d 826, 829 (3d Cir. 2000) (defendant convicted of arson required to pay restitution to victims and victims' insurance companies under MVRA for loss caused by the fire); see also PSR ¶ 99 (concluding that "restitution is mandatory" under MVRA and Guideline 5E1.1(a)(1)).

The MVRA provides for various categories of restitution, including lost or damaged property and lost income. See 18 U.S.C. § 3663A(b)(1)(A)-(B) (lost or damaged property); return of lost property); id. § 3663A(b)(4) (lost income). Here, the victim submitted an affidavit to Probation reporting a loss of $378,600, which was calculated as follows.

A.    Damaged Property

The victim suffered $288,600 in property damage. The vast majority of these losses stem from the destruction of nearly ten BMW vehicles that were sitting in Magnum's lot

---

[5] The government will submit a proposed restitution order in advance of sentencing.

5

when the defendant set it ablaze. The defendant also destroyed keys belonging to other vehicles in the lot that were not damaged, a computer, and the victim's personal belongings.

### B.   Lost Income

The victim suffered approximately $88,500 in one year's worth of lost income. This figure was calculated by taking the victim's average annual income over the life of his business, which was forced to permanently close after the defendant burned it. See United States v. Gushlak, 728 F.3d 184, 195–96 (2d. 2013) ("our case law reflects the settled understanding among courts of appeals that a 'reasonable approximation' [of restitution] will suffice, especially in cases in which an exact dollar amount is inherently incalculable.").

### C.   Stolen Money

The defendant stole $1,500 from the victim when he promised to tell the victim who destroyed his business, only then to implicate falsely an innocent person after the victim paid him the sum of money.

## VII.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range, that is, between 77 to 96 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Eric Silverberg
Eric Silverberg
Assistant U.S. Attorney
(718) 254-6365

cc:   Clerk of Court (LDH) (by ECF and E-mail)
Counsel of Record (by ECF and E-mail)
U.S. Probation Officer Ashtin Audain (by E-mail)